Leise v. Christie et al. All right. Good morning. Is this Shellcroft? Yes. You're reserved two minutes for rebuttal, and you can begin whenever you're ready. Thank you. May it please the Court, good morning. My name is Leise Shellcroft, and I'm here representing the Vermont Human Rights Commission and its employee and commissioner, Boar Yang and Kevin Christie. I'll begin by arguing the cross-appeal issue, which is that the district court decision on sovereign immunity should be affirmed because the Human Rights Commission, a commission that is created by state law, that is funded almost exclusively by the state, that is staffed by state employees, and that exercises a statewide mandate, is an arm of the state enjoying immunity under the 11th Amendment. The 11th Amendment question is framed by both the Supreme Court and the Second Circuit is what kind of government agency is the defendant. In the words of Mancuso v. New York State Thruway Authority, is it more like, quote, an arm of the state than like a municipal corporation or other political subdivision? Or in the words of Regents v. University of California Vidoe, does it have, quote, the same kind of independent status as a county, or is it instead an arm of the state? The Vermont Human Rights Commission has no separate existence. It has no independent status outside its condition as an agency of Vermont state government. It is funded almost exclusively by the state. It has state offices, state employees, and commissioners, all of whose existence are explicitly authorized by statute, and it's answerable to no authority other than the state through required annual reports to the Vermont legislature and indirectly to the governor through his ability to appoint and remove commissioners. And I take it the commissioners can be dismissed at will by the governor? That is correct. As a matter of state law, Vermont Supreme Court has been clear that any commissioner serves at the will of the governor and can be dismissed at any time by the governor. If that were not true, if, say, it was, you know, what we say in the federal context is an independent agency and it kind of operated independent of the political leadership of the state, would that make a difference? Then it wouldn't enjoy the same immunity? It would be one factor for the court to consider. In this case, the Vermont Human Rights Commission is separately answerable also to the legislature because by statute it is required to report on its activities to the legislature each year on the status of the program, the number of complaints that have been filed, the other activities that the commission has conducted. So it is the case here that the governor has some indirect authority, which is considered under Walker v. Waterbury to be a significant factor. It is also the case, however, that the HRC reports to the legislature as a matter of statute. So even if that were not so, it would only be one factor that would be an issue here. I would just also like to point out that the most important factor under the 11th Amendment to immunity is protection of the state FISC. There are statutory as well as practical reasons why a judgment here would implicate the state FISC. Vermont state employees are both defended and indemnified, according to Vermont statute, by the state. And so a judgment would have both legally and also practically, as Mancuso instructs us to consider, effects on the state FISC. So for all these reasons, we take the position that the district court decision granting sovereign immunity to the Vermont Human Rights Commission should be affirmed. I'll turn now to the qualified immunity analysis as to Borgang and Kevin Christie and their conduct in their individual capacities. Andrew Lies cannot overcome qualified immunity because Vermont law leaves it unsettled and uncertain whether an HRC investigative report is confidential or whether it is instead a public document. Vermont law is not settled regarding the confidentiality of HRC investigative reports. There is not a single case, not a Vermont Supreme Court case, not a trial level case. There is no statute and there is no rule that addresses the confidentiality of Well, the district court thinks there is a statute, right? The district court says that everything except for the final determination is confidential. The investigative file is confidential and there isn't a separate status for the report and so the report must be part of the file. I take it, you know, you're saying, well, there's regulations that suggest that the report is something different than the file. But that would just mean that it's not covered by the statute. So the district court thinks the statute pretty clearly says this is confidential and leaves open the possibility that maybe once the district court takes evidence on the practices of the commission, maybe there would be qualified immunity because maybe the way it's implemented in practice, it's treated as not confidential and so a reasonable officer or employee might have thought that it was a public document. So why isn't that right? Why isn't it just like, okay, you know, you can show if you introduce those facts that you're entitled to qualified immunity, but at the motion of dismiss stage, just looking at the statute by itself, the district court couldn't say that there's qualified immunity now. Well, what the district court said is that it was not able to conclude that it wasn't confidential. But I think that that, as I say in my brief, I think that turns the standard on its head. The statute does not specifically address an investigative report. You will not find anywhere in the statute a mention of the investigative report. Well, right, but the district court says what the statute says is everything is confidential, except if they find that there's discrimination, then they get to release the determination, which is not the complete report. It's the decision that they reach. And so the district court thinks the statute on its face says that this should be confidential and leaves open the possibility that based on factual development, it might turn out that the way it's in practice is treated is a reasonable person might have thought it was a public document. So why doesn't that depend on facts? In fact, a lot of your argument depends on the practices of the commission, right, not on the statute on its face. Well, respectfully, Your Honor, I disagree with that, and I do disagree that the district court has found that on its face it says the investigative report is confidential. On its face, the statute is silent on the issue. And so with that silence on the issue. So why isn't the way to understand it that the statute just says there is the investigative file and that's all confidential, and then the thing that can be made public is the determination? The thing that can be made public is not the report, so the report must be part of the file. That seems to be what the district court thinks, reading the statute on its face. And so she can't decide just based on the statute that you would have qualified immunity, but then there could be fact development. So we have to decide now without looking at fact development whether you're entitled to qualified immunity, right? We are entitled to that decision now, and the court can also look at the implementing regulations, which do clearly define the investigative report as something separate from the investigative file, which is to say the investigative report specifically is required to contain analysis and recommendations. That is something that the investigative file specifically excludes. I'd also like to point to- can be part of the determination that is released to the public or not. That's separate from the file, and that determination could include releasing the basis for the determination in a summary fashion in a report. That's the- That's exactly so. And if it's ambiguous under state law, then by definition there's qualified immunity under federal law, because that's the basis for the subsequent due process violation. That's exactly so. If Vermont law is ambiguous on this issue, it cannot also be clearly established. Only one of those things can be possible. And I'd also just like to say that it is- But why does the regulation make it ambiguous? So if the statute says everything is confidential except for the determination, and then there's a regulation that suggests that we're going to treat the report differently than the investigative file, like the regulation doesn't say the report is a public document, right? You're just saying the regulation, you know, suggests that there's-that the report might not be part of the investigative file. But it's possible that for the purposes of its internal regulations, the commission treats the report as different than what it calls an investigative file, but for purposes- But under the statute, there's no such distinction, and that's controlling, right? Like a regulation can't create an exception to a statute. A regulation can't create an exception to a statute, although I will say that there has never been a criticism of the regulations, and there's certainly never been an address to either the trial level or the Vermont Supreme Court arguing that the regulations are-exceed the scope of the enabling statutes here. Again, the statute doesn't say everything is confidential. The statute says two different things are confidential, the investigative file and the complaint file. But it doesn't say anything more than that. It just says those two things must remain confidential. Right, but from the perspective of the statute, that's everything except for the determination, right? Well, from the statute, it just addresses those two things, but we know from the regulations that there is this thing, this investigative report, that we know from the regulations is not part of the investigative file because it by definition can't be according to what those two things-what those two things contain. It may be the case, and we don't know at this point, it may be the case that someday the Vermont Supreme Court would tell us otherwise, but we don't need to reach that yet. All we need to show at this point is that it is ambiguous. All right. Thank you. Thank you. All right. Shia? Yes, good morning, Your Honor. May it please the Court, Kaveh Shia for Andrew Lease. Just picking up on that last exchange, I would respectfully submit that the Vermont statute is not ambiguous. Let me just see if we can agree on the law of qualified immunity. You would agree that your substantive process claim is based upon, you say over and over in your complaint, the unlawfully disclosed publicly the investigative report. That's the foundation, correct? That is, yes, Your Honor. So if, in fact, I know you disagree with this, and we'll hear about that in a second, but if we were to conclude that Vermont, the statute, is ambiguous as to whether or not that report is part of a final determination or not, then they would have qualified immunity, correct? Well, I – By definition, you can't clearly establish federal law if the state law that the federal claim is based upon is not clearly established, right? I just want to make sure we agree on that, and you can just tell us why you think it's unambiguous. I think that in concept, Your Honor is correct. The problem I have is that this entire interjection of the practices, supposed practices of the Human Rights Commission in treating the report potentially as part of the determination was outside the allegations. I understand that. I'm not even sure why that would be relevant for the qualified immunity analysis. We're looking at the statute and whether or not someone who looks at the statute would understand, because there's no cases out there. You agree there's no Vermont court cases out there at all on this issue. There's none, zero, right? There are no decisions, Your Honor, but the whole – So then in order for the individual not to have qualified immunity, you'd have to be clear from the face of the statute that this investigative report cannot be made public, right? It'd have to be clear from the face of the statute. The face of the statute, I think, clearly says that the interjection, the whole ambiguity argument is based on the introduction, the concept that the investigative report was at some point treated as the final determination. That factual interjection is not part of the allegations and has just been introduced as part of oral argument. Their position is that the final determination can include more than just one line, that it can include the basis for the final determination. It doesn't include all the interviews and things like that, but they want to lay out in their determination the reasons for it. And where does the statute say, no, final determination means only this? The statute is silent on that, right? I disagree, Your Honor. Where does the statute define what a final determination consists of? The statute says you have to look at the statute in its entirety. It talks about disclosure of the final determination as well as the name of the parties. So clearly, to include the name of the parties, if you're going to include the investigative report that has all the witnesses listed in there, that would be redundant. There would be no point for the statute to then specifically say you can disclose the names of the parties if you're going to put the investigative report out there. Clearly, if you look at the entire statute, there's great care taken in various sections to address the confidentiality and protection of witnesses. Even with a disclosure that's allowed to the parties or law enforcement agencies, there is a discretion to redact the names of the witnesses. That's because the statute recognizes, and again, we've given examples throughout the statute. Can I just ask you, so in your view, though, what does the final determination, what is in that? What constitutes that? Yes, Your Honor, thank you. That's in the records. Final determination is simply a one-page document that says the commission finds there is probable cause to find that there has been a… No, I guess I'm asking, though, so in your view, when the statute refers to the final determination, that means X. What's your view of what that means? That means the final determination. That's a document that the commissioners vote on. Right, and on that document, what is required? Just this person, we find reasonable cause of discrimination, and that's it? Yes. That's what that means? That's what they vote on, yes. That's what that means. Right, because the statute has all of these privacy protections, and then it says if the commission determines that there are reasonable grounds to believe that discrimination has occurred, that determination and the names of the parties may be made public after the parties have been notified of the commission's determination. So your position, and I think this is the position of the district court, is when it says that determination, it's referring to the determination that there are reasonable grounds to believe that discrimination has occurred. Yes, Your Honor. Because it says the names of the parties, it must be the bare determination, because otherwise it wouldn't make sense to include the names of the parties. Do you think that that is unambiguous enough that, like, if the determination was accompanied by a report, that that clearly is prohibited by the statute? I believe so, Your Honor. This entire concept of an investigative report is really an internal invention. The statute doesn't talk about an investigative report. It's obviously part of the complaint file or the investigation file. And it's very clear that, hey, if there is a determination, you're going to release that determination and the names of the parties. But if that's going to be read as allowing disclosure of the investigative report that has all the information, including the identity of all the witnesses… Right, because then all of the privacy protections, if you just put in all of this information that it says must be confidential into a report, then subsection C would eat the rest of the statute. That's correct, Your Honor. That's our position. But the district court, as I pointed out to opposing counsel, does leave open the possibility that there might be further factual development about the practices of the commission and how a reasonable commissioner would understand the report to be treated. And so maybe they will have qualified immunity after that evidence is considered. Now, as a practical matter, doesn't that evidence show that the commission in practice has released reports and treats it as if it can release them? And so, I mean, it might depend on a fact question. Wouldn't they ultimately receive qualified immunity? Again, that's – perhaps that's something that can be developed. And again, this came up at oral argument, and I'm reminded I checked for this court's recent rulings on Monday in the Dixon v. Brown. This is the court, again, emphasized on a motion to dismiss, you have to stick to the record. You can't just play lip service to it and then introduce all these other things. So at oral argument, this suggestion was made that this was a practice, that they would release the investigative report as part of this determination. In fact, it didn't happen here. They released it through the newspaper a couple months later. So I understand. I'm taking a peek at what the factual development might look like, but maybe it does suggest that they – I guess from the face of the complaint, you can say the commission took a vote that they would release it pursuant to a request. So it did purport to be an official act of the commission, right? I'm sorry. Even from the face of the complaint, even without facts introduced to the record about the practices of the commission, the commission did vote on whether they would release the report in response to a meeting request, right? I don't know that, Your Honor. That's – again, there was some kind of an executive decision or executive meeting apparently. Those are not facts that we know about. So my – the allegations are that this was released, emailed to a reporter and was done so several months after the final determination. And in the broader concept of the information out there, I understand there was an interview of a former executive director who said we never disclose investigative reports. It was not our practice. So if that's going to be a factual issue that someone is going to bear on qualified immunity – That was my question. So I guess you might agree that if you do proceed, if the evidence shows that as a matter of practice they just treated it as a public document, then maybe somebody who released it would be known to qualified immunity. But that would depend on that showing. Yes, Your Honor. And that would be more appropriate on a summary judgment stage as opposed to on a motion to dismiss, which we are. And this court has indicated this is a very heavy burden at this stage of the case on a motion to dismiss. And, again, I'm very concerned, and that's why I raised Dixon, because the record is replete with these references to extrinsic information, which we certainly disagree with in terms of its accuracy, including the fact that – So you don't think that it was the practice of the commission to release these reports? Again, Your Honor, I don't think it was. I think that this was a situation that was, as we have alleged, was part of this plan to politically damage the Vermont State Police, and this trooper got – Yeah, but a lot of that are your allegations that they're putting in false, derogatory information into the report. But this report says that there's absolutely adjudicatory immunity for that, for the contents of the report, right? And you're not challenging that. So the claim that you have now is whether the – just the bare release of it was authorized or not. Well, the release of the report as well as – obviously, the report has numerous inaccuracies in it, which we intend to prove. But can I ask you that, because also there's this defamation claim, right? And the state says that a lot of the report is really opinion statements. So what are the factual – I mean, so what are the factual statements in the report that you think are defamatory or false and defamatory? We've detailed many, many facts in that report that we say are completely false. And I can go over the details of the allegations. I'm just curious about, like, maybe the most obvious one, because it doesn't seem like you're disputing the account of the officers' interactions with the parties, right? So the report kind of recounts all those interactions, and he didn't believe this person and did this and whatever. You don't really dispute that account. You disagree with the conclusion that the inference to be drawn from those facts is bias, right? So is that a statement of opinion? I mean it's kind of weird to say because the report ultimately concludes that there's a violation of the discrimination laws, which you would think would be provable and not. But I'm just sort of asking, like, is there, like, a particular statement that makes it most obvious that these are factual statements that you think are defamatory? Like, do you disagree with some account of the interactions, or it's all about the conclusion that there was a bias? We disagree with the specific facts, as well as the conclusions or inferences that are drawn, but there are very specific facts that we disagree with. And so, for example, there's this claim that in the report that Corporal Lease was favoring the tenant and was helping him and trying to protect him, whereas he was trying to help the complaining party in that first instant that she demanded that the tenant be removed from the kitchen because she had an event. So there's a very clear, different, factual circumstance there where- I think we're going far beyond the qualified- Yes, sir. So let's hear from Ms. Schultz on her rebuttal. Thank you. If I may just indicate, I'm sorry I didn't have a chance, but we do stand on our brief on the question of sovereign immunity. Yes, all right. Thank you. Thank you. The court's questioning has focused on this, I think, properly on the question about whether it's clearly established under Vermont law that the investigative report is confidential. I'd also like to point out that it is necessary that a Vermont law be clearly established on that issue, but it is not sufficient in order for qualified immunity to be defeated here. So in order to defeat qualified immunity, Mr. Lies has to show that it is clearly established under Vermont law that it is improper to release the investigative report. He must also show that it's clearly established that the release is for an improper purpose. In Mr. Lies' and Trooper Lies' second amended complaint, he articulates bases for release of this investigative report by the Human Rights Commission, by Yang and Christie, that are arguably proper purposes given their statutory mission. So the statutory mission of the Vermont Human Rights Commission is to, through public... But if it came down to that, that would be a factual thing that could be developed in discovery, whether or not the articulated reasons are the real reasons or they're the malicious reasons. If it really comes down to that, that really is not something that could be decided at this stage just because that's articulated, right? Well, these are grounds that he actually articulated in his second amendment complaint. So in the second amendment complaint, it is alleged that this release was done in part to, quote, shape public opinion, also, quote, to promote themselves, Yang and Christie, as aligned with national movements. But the reason why it says it's meant to shape public opinion and to promote themselves is that by making the false conclusion that the officers were racist, it would shape public opinion in the direction they wanted and promote themselves. So, like, that's part of allegations that they're spreading defamatory statements, right? The allegation is… It's like, I mean, write a motion to dismiss. If we credit the allegations of the complaint, then they're spreading false statements and defamatory statements. And that can't be – it can't be that that's a permissible purpose of the commission. So not necessarily to spread defamatory statements or false statements, although I would say two things about that. First, as the court notes, there are no actual provably false statements in the Human Rights Commission report. Yeah, is that right? So, I mean, the mission of the commission is to make determinations about whether individuals violated the anti-discrimination statutes. I mean, is it really possible to say that when the commission is making a legal determination about whether there's a violation of law, like, oh, that's just a matter of opinion and, like, one person says it's illegal. The other person says it's legal, but we agree to disagree, and it doesn't really have consequences. I mean, wouldn't that – isn't that extraordinary to say that if a state agency releases a report that says there's a legal violation, that that's just a matter of opinion and can't be defamatory? Well, a state agency is saying there is a – there are reasonable grounds to believe that there has been discrimination here, and, of course, that then authorizes them under statute to file a lawsuit and attempt to prove it. In that respect, it's not really different from any other prosecutorial instrument where you are saying – Yeah, but there's prosecutorial immunity for that. I mean that's a different kind of immunity. I mean you don't have that because you don't – you're not the prosecutors. Well, we actually alleged below that there was absolute immunity based on either quasi-judicial immunity or prosecutorial immunity. I don't think that – But that's not here. That's not here. That's correct. Can I ask you – if we were to agree with you that there's qualified immunity on federal law, would we have jurisdiction to reach whether or not there's qualified immunity under Vermont law? It would have to be inextricably intertwined with our decision, and I'm not sure that it is, and I'm not sure – Vermont law has other elements to it, such as whether it's a ministerial act or a discretionary act. That's not part of the federal analysis, so why wouldn't we dismiss that part of the appeal for lack of jurisdiction? So Vermont law on state qualified immunity essentially adopts the federal test and it does – Essentially it's not – we don't – where is in our test whether it's discretionary or ministerial? That's not in our test, right? That is correct, but it is – So why wouldn't it be proper for us to dismiss for lack of jurisdiction and then presumably the district court would decline jurisdiction – supplemental jurisdiction over that because there would be no federal claim left? It would be decided by the state court, wouldn't it? It could be decided by the state court. The court could continue to exercise jurisdiction. I would certainly argue that it shouldn't at that point. Yeah, district courts never do in that situation, never. It's up to the district court and not us, right? That would be up to the district court, although I do think that this court could decide qualified immunity on the state law issues as well because it's not clearly established. I have one more question about the statute. So I mean Mr. Shahi acknowledged that if it was shown that the commission had a practice of releasing the report and treating it as public, that perhaps the defendants would have qualified immunity based on that showing. So why isn't what the district court is doing reasonable? If you look at the statute and there are all of these confidentiality provisions about everything that needs to be withheld, and then it says only the determination that discrimination has occurred in the names of the parties is what's released. Like if I read that statute, it seems to me like you can't release anything, but that final determination in the names of the parties, that's what it kind of seems like on its face. But if you could show that, well, that's not how anybody understood it. That's not the practice of the commission and so on. Maybe there's qualified immunity. Why isn't that the answer that actually it does depend on a factual showing? And so that means that like on a motion to dismiss, you wouldn't decide it, but you probably – if that's true that nobody understood it that way, you're going to prevail anyway. I have two answers to that. One answer is that it is – you have to read the statute together with the implementing regulations and that together those things do create and show that there is ambiguity. So it's not just the statute. It is also the regulations, and those haven't ever been criticized, and so there's every reason to think that the HRC and its officials would have been operating under those. The difference from the regulation is that the investigative file was not necessarily treated as – sorry. The report was not necessarily treated as part of the investigative file. That's correct. It doesn't say that it's a public document, but you said that that introduces enough ambiguity that we should say that we can't really conclude anything about confidentiality. You do agree that if the statute clearly said you can't release the investigative report, the presence of a regulation that says something different wouldn't change the law, right? I would agree with that. I would agree with that, but that's not the case. Rule 34, when it defines investigative file, doesn't – investigative report is nowhere to be found in the materials that are included or in the materials that are not included. It's just not listed among all the items there. So Rule 34 just doesn't speak to that, right? That's right, but the thing about Rule 34 is that it says that the investigative file can't include legal analysis or recommendations or work product, whereas Rule 21, which talks about the investigative report, says it must include those things. So it's clearly talking about two different things. And then the only other thing I would say with respect to the question about whether there would need to be additional fact-finding is that in the Second Amended Complaint, there are allegations as to past practice and as to the past practice of the Human Rights Commission in releasing investigative reports. So that is contained on the face of the Second Amended Complaint. All right. Thank you both for the reserved decision. Have a good day. Thank you.